COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


GERALDINE B. MONDIDO
                                    MEMORANDUM OPINION[*] BY
v.         Record No. 0035-97-2    JUDGE SAM W. COLEMAN III
                                        JULY 28, 1998
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                       Timothy J. Hauler, Judge

            William T. Fitzhugh (Beddow, Marley &
            Associates, on brief), for appellant.

            Richard B. Smith, Assistant Attorney General
            (Richard Cullen, Attorney General, on brief),
            for appellee.


      Geraldine B. Mondido was convicted by a jury for

distributing a controlled substance in violation of Code

§ 18.2-248.  The sole issue on appeal is whether the trial court

erred in refusing to instruct the jury that it could find Mondido

guilty of an accommodation distribution under Code § 18.2-248(D).

 Because the evidence did not support an instruction on

accommodation distribution, we affirm the conviction.

                            BACKGROUND

      Mondido was indicted by a multijurisdictional grand jury for

distributing cocaine and conspiring to distribute cocaine.  The

material facts relating to the charges were substantially

contested at trial and are summarized as follows.

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

The Commonwealth's evidence established that City of Petersburg Police Officer Stacy Lucas, together with Chesterfield County Police, were investigating Mondido for suspected drug trafficking. Lucas testified that she and an informant, Gertrude Gilmore, who claimed to be a friend of Mondido's son Jesse, drove to Mondido's residence. Lucas told Mondido that she wanted some crack cocaine and asked Mondido if she had any drugs. Mondido replied she did not but could take Lucas to get some. Mondido got in the van to accompany Lucas and Gilmore.

According to Lucas, as they were leaving the driveway, Mondido told Lucas to stop because she had spotted her other son, Anthony Delacruz, who, she noted, "might have something." Lucas testified that Mondido called out to Delacruz and told him that Lucas and Gilmore "were looking." Lucas told Delacruz that she wanted to buy "a $20 piece," whereupon Delacruz walked behind some nearby trailers and returned with a twenty-dollar piece of crack cocaine. Lucas testified that Mondido took the cocaine from Delacruz and handed it to her and that she handed Mondido a twenty-dollar bill which Mondido in turn gave to Delacruz. Lucas further testified that Mondido then asked Delacruz, "Where is mine?" Delacruz replied he had sold the last of the drugs.

Testifying in Mondido's defense, and conceding that he sold cocaine to Lucas, Delacruz testified that Mondido did not initiate or participate in the drug transaction. According to Delacruz, he was playing football at a neighbor's house when he

- 2 -

saw Mondido standing beside the minivan and talking with Lucas and Gilmore. He testified that he approached the van and that Lucas "asked me did I have a 20, and I told her to hold on, . . . and I left and came back with the [cocaine]." He claimed that he gave the cocaine directly to Lucas and that Lucas handed him a twenty-dollar bill in return. Delacruz stated that Mondido never touched the cocaine or the money and that she took no part in the transaction. When asked whether Mondido said anything during the transaction, Delacruz testified that she only asked him "what [he] was doing" when she saw him giving Lucas the cocaine.

Mondido testified that she was sitting in her house when the van pulled into her driveway and sounded its horn several times. Mondido went to the van and asked what Lucas and Gilmore wanted. Gilmore and Lucas asked when Jesse would be home. Mondido stated that, without any beckoning on her part, Delacruz approached the van and began talking to Lucas. She testified that Lucas asked Delacruz for crack cocaine and that Delacruz retrieved some drugs by some nearby trailers. Mondido testified that she witnessed the transaction between Lucas and her son, but took no part in it and did not handle the money or the drugs. Mondido stated that she asked Delacruz "what the hell [he was] doing" before he took the money from Lucas and ran away.

At the conclusion of the evidence, the trial court granted Mondido's motion to strike the conspiracy charge and denied the motion to strike the charge of distributing cocaine. The trial

court rejected an instruction proffered by Mondido that would have allowed the jury to find her guilty of an accommodation distribution.

ANALYSIS

When reviewing a trial court's denial of a jury instruction, this Court must "see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Hudspith v. Commonwealth, 17 Va. App. 136, 137, 435 S.E.2d 588, 589 (1993) (citations omitted). "[T]he trial court should instruct the jury only on those theories of the case which find support in the evidence." Morse v. Commonwealth, 17 Va. App. 627, 632-33, 440 S.E.2d 145, 149 (1994). Further,

> [w]hen instructing the jury, the trial judge must be mindful that:
>
> > "[t]he jury is not required to accept, in toto, either the theory of the Commonwealth or that of an accused. They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime."

Delacruz v. Commonwealth, 11 Va. App. 335, 338-39, 398 S.E.2d 103, 105 (1990) (quoting Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958)); see Painter v. Commonwealth, 210 Va. 360, 367, 171 S.E.2d 166, 169 (1969). Applying these principles, we find that the evidence, viewed in the light most favorable to

the defendant, see Turner v. Commonwealth, 23 Va. App. 270, 275, 476 S.E.2d 504, 507 (1996), does not support granting an instruction on accommodation distribution.

Code § 18.2-248(D) provides for mitigation of punishment where one convicted for distributing illegal drugs is found "not to be a dealer in drugs, but one 'motivated by a desire to accommodate a friend without any intent to profit or to induce or to encourage the use of drugs.'" Barlow v. Commonwealth, 26 Va. App. 421, 430, 491 S.E.2d 901, 905 (1998) (quoting Stillwell v. Commonwealth, 219 Va. 214, 219-20, 247 S.E.2d 360, 364 (1978)). A defendant has the burden of proving the existence of an accommodation distribution by a preponderance of the evidence. Heacock v. Commonwealth, 228 Va. 397, 406, 323 S.E.2d 90, 95 (1984).

Mondido contends the jury could have believed that she agreed to find a drug supplier for Lucas and engaged Delacruz to sell Lucas drugs, but, at the same time, could have disbelieved Lucas' testimony that Mondido handled the drugs and the money and asked Delacruz: "Where is mine?" In this regard, Mondido asserts, the jury could have found that Mondido aided and abetted Delacruz's drug sale but did so solely as an accommodation to Lucas without the intent to profit from the transaction or to induce Lucas to use or become addicted to cocaine.

The record is devoid of any evidence, which if believed, would have supported an accommodation instruction. According to

Mondido's evidence, Mondido was merely present when Delacruz sold drugs to Lucas, and she neither participated nor countenanced the drug sale. Under the Commonwealth's version of the facts, Mondido arranged the drug sale, actively participated in the transaction and expected drugs in return for her participation. Mondido contends that Delacruz's testimony contradicts that of Lucas concerning Mondido's handling the drugs and money and asking "Where is mine?" Thus, Mondido argues that by disbelieving those aspects of Lucas' testimony, the jury could conclude that she was only assisting Lucas as an accommodation and that she neither expected to profit from the sale nor did she intend to induce Lucas to become addicted to or dependent upon drugs.

Her argument lacks merit. Although the jury might have disregarded all or any portion of Lucas' testimony, the remainder of the evidence does not support a finding by a preponderance of the evidence that Mondido arranged the sale as an accommodation to Lucas. See Guss v. Commonwealth, 217 Va. 13, 15, 225 S.E.2d 196, 197 (1976) (per curiam). Mondido was "required to produce some evidence which satisfies the trier of the facts that his distribution was for accommodation." Stillwell, 219 Va. at 225, 247 S.E.2d at 367. No evidence in the record tends to prove that Mondido arranged for a drug sale and in doing so was motivated solely by a desire to accommodate a friend. Not only is the record devoid of evidence that Mondido was arranging a drug sale

solely as an accommodation for a friend, accepting that she arranged the sale, the evidence shows that she arranged a sale with her son who lived at home with her.  Because of the absence of evidence that Mondido was accommodating Lucas, and because the evidence shows that Mondido had the self interest of assisting her son who resided with her to sell drugs, the evidence did not support giving an accommodation instruction.

Mondido's reliance upon Gardner v. Commonwealth, 217 Va. 5, 225 S.E.2d 354 (1976) (per curiam), is misplaced.  In Gardner, two undercover police officers picked up the defendant, who was hitchhiking, and asked him to sell them marijuana.  Gardner told them he had no drugs but might be able to locate some if he could make a phone call.  Gardner introduced the officers to an acquaintance who sold LSD to one of the undercover officers.  At trial, Gardner testified that he did not actively participate in the drug sale, that he handled neither the drugs nor the money, and that he never received, nor expected to receive, any consideration for arranging the meeting with the drug supplier. Id. at 6, 225 S.E.2d at 356.  The Virginia Supreme Court held that Gardner's evidence, "if believed, was sufficient to show that he had no intent to share in the sale proceeds or otherwise to profit from the transaction, or to induce [the officers] to use or become addicted to or dependent upon" drugs, and, therefore, warranted an instruction on accommodation distribution under Code § 18.2-248(D).  Id. at 7, 225 S.E.2d at 356.

Unlike the defendant in <u>Gardner</u>, who testified that he aided in the sale of the drugs only as an accommodation, there is no evidence in this record that, "if believed," could have established that Mondido only intended to accommodate Lucas by helping her locate a drug source. Accepting Mondido's argument, even if the fact finder chose to disbelieve the most incriminating aspects of Lucas' testimony, the evidence proved that Mondido did not <u>solely</u> intend to accommodate Lucas in locating a drug seller because she assisted her son in finding a person to purchase his drugs "for profit." Accordingly, the trial court did not err in refusing to grant an instruction on accommodation distribution. Thus, we affirm the conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

Code § 18.2-248.1(a)(3) provides a reduced penalty where the distribution of a controlled substance is made "only as an accommodation to another individual . . . and not with the intent to profit thereby from any consideration received or expected nor to induce the recipient or intended recipient of the controlled substance to use or become addicted to or dependent upon such controlled substance."  Because the evidence supported Geraldine B. Mondido's request for an accommodation instruction, I dissent.

"[T]he appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable" to Mondido.  Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992).  Furthermore, the principle is well settled that if "more than a mere scintilla" of "credible evidence in the record supports a proffered instruction . . . , failure to give the instruction is reversible error."  Id.  See also Miller v. Commonwealth, 5 Va. App. 22, 24, 359 S.E.2d 841, 842 (1987).

In refusing to grant the accommodation instruction, the trial judge stated the following:

> The problem I've got with this
> accommodation theory in this case . . . is
> [Mondido's] testimony she didn't do anything.
> . . .
>
> She testifies she didn't distribute
> anything to the officer, she just basically
> brought the parties together.  That's the
> problem I've got with the accommodation.  If

she were to have taken the stand and said, yeah, you know, they came for the drugs and I knew the boy had some and I just brought the parties together and gave them the drugs, and I think he'd get the accommodation.  [Your] evidence doesn't suggest that.  [Your] evidence is that [Mondido] did nothing.

     *     *     *     *     *     *     *

     I'm not going to give it because, number one, I think the evidence is clear that neither . . . Mondido nor her son knew either . . . the . . . informant or the undercover officer.

     Her son testified he didn't know these people and never seen them before.  [Mondido] testified she didn't know who these people were. . . .  I'm not going to give an accommodation instruction in this case.  I don't believe it's appropriate based upon the testimony of [Mondido] and based on the testimony of her son.  We have either got [Mondido] being merely present or arrested as a principal in the first or second degree to a distribution.

     It's a factual question for the jury.  If she was merely present, she's not guilty of anything.  Or they can find her to be a principal.

(Emphasis added).  The trial judge's reasoning is clearly flawed.

     In determining whether the evidence is sufficient to support an accommodation instruction, Mondido was entitled to rely upon any reasonable inference or proof that flows from the evidence, including the Commonwealth's evidence.  See Brown v. Commonwealth, 215 Va. 753, 755, 213 S.E.2d 764, 766 (1975).  Stated differently, "[i]f there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction."  Delacruz

– 10 –

v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990).  Only through proper and complete instruction can the trial judge give the jury "a legal guide" to make its determination.  Painter v. Commonwealth, 210 Va. 360, 367, 171 S.E.2d 166, 170 (1969).  Therefore, when the trial judge instructs the jury, the trial judge must be mindful of the following principles:

> The jury is not required to accept, in toto, either the theory of the Commonwealth or that of an accused.  They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true.  In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.

Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958).

In this case, under the Commonwealth's version of the facts, the undercover officer and informant knew Mondido's son and previously had met Mondido.  The officer and the informant had previously visited Mondido's residence on at least one other occasion to deliver a birthday card to Mondido's son.  According to the officer's testimony, when the officer and the informant went to Mondido's residence on this occasion and asked Mondido for cocaine, Mondido said she did not have any.  Mondido got into the officer's vehicle to take the officer and the informant to find cocaine.  As they were leaving the driveway, Mondido spotted her other son, Delacruz, and said he "might have something." From this evidence, the jury could reasonably infer that Mondido

- 11 -

assisted the officer and informant only as an accommodation to find cocaine.

Mondido told her son, Delacruz, that the women "were looking." The officer asked Delacruz for a "$20 piece" which Delacruz produced. According to the officer, Delacruz handed the cocaine to Mondido who passed it to the officer. The officer handed Mondido a twenty-dollar bill, and Mondido passed it to Delacruz. Delacruz admitted he made the sale and received the proceeds from the sale. This evidence clearly was sufficient to support an accommodation instruction.

The jury was not required to believe Delacruz's testimony that Mondido did not participate in the transaction or Mondido's testimony that she witnessed the transaction but took no part in it. If the jury believed that Mondido was escorting the officer and informant to another person who would sell cocaine to the officer and that Mondido did not receive any consideration for this transaction, the jury could have found that Mondido was guilty of distribution but that she did so only as an accommodation to the officer.

The majority asserts that under the Commonwealth's version of the facts, Mondido's question, "Where is mine?," indicates that Mondido must have expected drugs in return for her participation in the transaction. This assertion is faulty for two reasons. First, in making that assertion the majority disregards the standard of review, that is, the evidence must be

regarded in the light most favorable to Mondido. The jury could have believed the Commonwealth's evidence that Mondido agreed to find a cocaine supplier for the officer, told the officer that Delacruz might have cocaine, and indicated to Delacruz that the officer was looking for cocaine. Furthermore, based on evidence in the record to the contrary, the jury could have disbelieved the officer's testimony that Mondido asked Delacruz, "Where is mine?"

Second, even if the jury believed Mondido asked the question, "Where is mine?," the question does not necessarily indicate that Mondido expected drugs in return for introducing the undercover officer to Delacruz. Significantly, Mondido did not address her question to the officer or the informant and did not seek payment from them. From the evidence, it is just as likely that Delacruz had promised to deliver cocaine to Mondido for her own personal use separate from the transaction at hand. In any event, however, the evidence clearly did not prove that Mondido received anything from Delacruz.

It is well established that "where there is evidence as to the purpose of the distribution that is susceptible of different interpretations," it is "peculiarly within the province of the jury to determine from the evidence whether the distribution . . . was made for profit or merely [as an] accommodation." Brown, 215 Va. at 754, 755, 213 S.E.2d at 766, 766. In Gardner v. Commonwealth, 217 Va. 5, 225 S.E.2d 354 (1976), the

- 13 -

Commonwealth's evidence proved that the accused met the undercover agent and informant while the defendant was hitchhiking.  Id. at 7–8, 225 S.E.2d at 356.  Although the accused had not previously known either the agent or the informant, he guided them to a nightclub where another person supplied them drugs.  The accused never received any purchase money for the drugs and did not have any drugs in his possession when the purchase was made.  See id. at 6, 225 S.E.2d at 355. The Supreme Court held that the trial judge committed reversible error in failing to instruct the jury on the accused's accommodation defense because the record contained evidence which, if believed, would support the defense.  See id. at 8, 225 S.E.2d at 356.  By refusing to grant the instruction, the trial judge in Gardner, as in this case, essentially "treat[ed] the evidence of accommodation as evidence only of aiding and abetting in the distribution for profit" and impermissibly restricted the jury's findings.  217 Va. at 8, 225 S.E.2d at 356.

In view of the facts in the record, the jury could have found that Mondido did not receive or expect any consideration from the transaction.  All of the witnesses testified that Delacruz had the cocaine and sold it.  All of the witnesses testified that Delacruz left with money in his hand.  Mondido did not supply the cocaine, and Mondido did not receive any money from the transaction.  Under the Commonwealth's version of the facts, the jury could have concluded that Mondido merely passed

both the cocaine and the money between Delacruz and the undercover officer as an accommodation.

Here, as in Gardner, evidence exists from which the jury could conclude that the sale was consummated only by a person other than the accused and that the accused neither received nor expected to receive the purchase money.  See 217 Va. at 7-8, 225 S.E.2d at 356.  Furthermore, the facts in Gardner suggest that the trial judge also erroneously ruled that Mondido could not rely upon the accommodation defense because she testified that she did not know the agent.  See 217 Va. at 6, 225 S.E.2d at 355 (the accused first met the officer while hitchhiking and then made an offer to assist).  Thus, Mondido "was entitled to an instruction based upon evidence which, if believed, was sufficient to show that [she] had no intent to share in the sale proceeds or otherwise profit from the transaction, or to induce [the officer and informant] to use or become addicted to or dependent upon" the drug.  Id. at 7, 225 S.E.2d at 356.

Because the evidence supported an accommodation instruction, I would hold that the trial judge erred in failing to grant the accommodation instruction.  I would reverse the conviction and remand the case for a new trial.

- 15 -