COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge McClanahan and Senior Judge Willis
Argued at Richmond, Virginia


CHARLES WELFORD THOMAS, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2215-04-2                      JUDGE ELIZABETH A. McCLANAHAN
                                                              JANUARY 31, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge

Olaun A. Simmons (Brent A. Jackson; The Jackson Law Group,
P.C., on brief), for appellant.

Richard B. Smith, Senior Assistant Attorney General (Judith
Williams Jagdmann, Attorney General, on brief), for appellee.


Charles Welford Thomas, Jr. was indicted for the robbery and malicious wounding of

Christa Adams in violation of Code §§ 18.2-58 and 18.2-51, respectively. During a jury trial, the

circuit court allowed a jury instruction tendered by Thomas that would have permitted the jury to

find him guilty of unlawful wounding, but refused an instruction which would have permitted the

jury to find him guilty of assault and battery. The jury convicted Thomas of robbery and

malicious wounding.[1] Thomas contends on appeal that the trial court erred in refusing to instruct

the jury on the lesser-included offense of assault and battery. For the reasons that follow, we

affirm the decision of the trial court.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The issue on appeal relates only to the malicious wounding conviction.

## I.  BACKGROUND

On appeal, when considering whether a trial court erred in refusing to give a proffered jury instruction, we view the evidence in the light most favorable to the defendant, the proponent of the instruction.  Commonwealth v. Leal, 265 Va. 142, 145, 574 S.E.2d 285, 287 (2003); Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002).

The evidence discloses that sixty-one-year-old Christa Adams, shift supervisor at a restaurant, was closing the restaurant in the early morning hours of December 10, 2003.  Adams exited the restaurant carrying her purse, the restaurant proceeds, and several other items.  As she was locking the restaurant door, an assailant attacked her from behind, put a gloved hand over her mouth, demanded money, and pushed her into a brick wall in a corner inside the doorway.  Adams struggled to get away, tried to position herself where passersby could see, and "screamed real loud" for "help" several times.  As the assailant repeatedly pushed her back into the corner, the assailant threatened Adams, stating "Give me your money, b----, or I'm going to kill you, and I'm going to slit your throat."  The assailant also "kept pushing [his gloves] into [her] eyeballs, and [Adams] thought [she] was going to lose [her] eyes."

Another assailant appeared and repeatedly beat Adams on the arm, hands, head, and shoulder with a black metal rod or pipe while the initial assailant held her down.[2]  Both assailants continued to beat Adams and "smash" her head against the brick wall and doorway.  One of the assailants "kicked [her] in [her] side twice" "very hard" when she was down.  After Adams's hand became numb, the second assailant "took off" with the money while the initial assailant continued to hold Adams.

_____

[2] Lillian Fuentes, the codefendant charged and indicted for committing these same crimes with Thomas, was also convicted of robbery and malicious wounding.  Fuentes admitted that she hit Adams with the metal pipe at least three times during the attack.

As a result of the attack, Adams suffered multiple contusions and abrasions to her face, hands, wrists, arms, and ribs as well as injuries to her legs and ankles. She was transported to the emergency room where her arm was placed in a splint. At trial, the victim testified she was bruised for weeks, took "pain killers" for four days, and at the time of trial, she continued to experience headaches.

## II. ANALYSIS

The sole issue on appeal is whether Thomas was entitled to a jury instruction on assault and battery, a lesser-included offense of malicious and unlawful wounding. "If the evidence is sufficient to support 'a conviction of the crime charged, and there is no independent evidence warranting a conviction for a lesser-included offense, an instruction on the lesser-included offense need not be given.'" Vaughn, 263 Va. at 36, 557 S.E.2d at 222-23 (quoting Guss v. Commonwealth, 217 Va. 13, 14, 225 S.E.2d 196, 197 (1976)). Thus, "we have rejected the concept that a jury instruction on the lesser-included offense must always be given." Id. at 35, 557 S.E.2d at 222.

Regarding the lesser-included offense instruction, Thomas argues that he merely intended to rob Adams and that he did not possess the requisite intent for malicious or unlawful wounding. Both malicious and unlawful wounding require that the accused act with the specific intent "to maim, disfigure, disable, or kill" the victim. Code § 18.2-51. Where the evidence of unlawful or malicious wounding warrants a conviction, more than a scintilla of evidence must show that Thomas did not intend to maim, disfigure, disable, or kill Adams to support the lesser-included offense of assault and battery. See Vaughn, 263 Va. at 36, 557 S.E.2d at 223.

"Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the accused and any statements made by him." Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000) (citing Commonwealth v. Taylor, 256 Va. 514, 519, 506

S.E.2d 312, 314 (1998)); see also Vaughn, 263 Va. at 36, 557 S.E.2d at 223 (Intent is "a state of mind which may be proved by a person's conduct or by his statements." (internal quotation marks and citation omitted)).

Although Thomas claims he intended merely to rob Adams, Thomas shoved Adams into a brick wall, *threatened to kill her by slitting her throat*, pushed his gloves into her eyes to the point Adams thought she would "lose [her] eyes," participated in brutally beating and kicking Adams, and "smash[ed]" her head into the brick wall and doorway. Adams suffered injuries to her face, hands, wrists, arms, ribs, legs, and ankles as a result of the attack. The gravity of Adams's uncontroverted physical injuries inflicted by Thomas, his brutal conduct in attacking her, and his verbal threats to kill her belie any finding that he did not maliciously intend to maim, disfigure, disable, or kill Adams. See Leal, 265 Va. at 147, 574 S.E.2d at 288; see also Vaughn, 263 Va. at 37, 557 S.E.2d at 223; Guss, 217 Va. at 15, 225 S.E.2d at 197.

### III. CONCLUSION

Accordingly, there is no scintilla of evidence that Thomas did not intend to maim, disfigure, disable, or kill Adams, and therefore the trial court did not err in denying the jury instruction on the lesser-included offense of assault and battery. We affirm the trial court.

Affirmed.